**TEXAS EMPLOYERS' INSURANCE ASSOCIATION, Appellant,**

v.

**Mrs. G. P. CHUNN, Appellee.**

**No. 3104.**

Court of Civil Appeals of Texas.

Eastland.

Jan. 14, 1955.

Rehearing Denied Feb. 11, 1955.

Turpin, Kerr & Smith, Midland, for appellant.

J. Ray Martin, Snyder, for appellee.

COLLINGS, Justice.

This is a workmen's compensation case. Mrs. G. P. Chunn, individually and as guardian of her minor children, brought suit against Texas Employers' Insurance Association to set aside an award of the Industrial Accident Board and to recover benefits provided under the Workmen's Compensation Law, Vernon's Ann.Civ.St. art. 8306 et seq., for the death of her husband, G. P. Chunn. It was alleged by plaintiff that her husband was an employee of Morris & Blount Tool Company for which appellant carried workmen's compensation insurance; that while in the course of his employment with said company, her husband lost his life in an automobile accident about eight miles north of Big Spring, Texas, on August 8, 1952. The trial was before a jury and based upon its answers to special issues, judgment was rendered for the plaintiff for the maximum amount of compensation provided in such cases, discounted to a present lump sum value. Texas Employers' Insurance Association has appealed.

Appellant's first and second points complain of the action of the court in admitting over its objection and in refusing to strike certain claimed hearsay testimony of Mrs. G. P. Chunn, bearing on the question of the course of employment of G. P. Chunn at the time of his death. An ultimate and disputed issue in this case under the pleadings and evidence was whether or not Mr. Chunn's fatal injuries were sustained in the course of his employment for Morris & Blount Tool Company. In response to appellee's request for admission, appellant admitted that Chunn was in the employ of Morris & Blount Tool Company at Snyder prior to the time of his death; that the company had an office in Midland and pursuant to a request from the Midland office to the Snyder office of the company and upon instructions from C. K. Elder, who was the shop foreman at Snyder, Mr. Chunn went from Snyder to Midland on August 5, 1952, to work at Midland. Appellant further admitted that Morris & Blount agreed to pay Mr. Chunn two hours' time for the trip to Midland and two hours' time for his return trip to Snyder when his, Chunn's, job was completed in Midland, but denied that the company agreed to pay him any time or furnish gasoline or compensation for any kind of trips

between Midland and Snyder before the job he was sent to Midland to do was completed. Appellant admitted that Chunn was paid two hours' time for his trip from Snyder to Midland on August 5th; that he worked in Midland at the office of the company on August 6th, 7th and 8th, 1952; that on August 8th the work that Chunn had come to Midland to do could not be completed that day, due to the unavailability of parts, and Chunn was given permission to leave the premises of Morris & Blount Tool Company at approximately 4:28 P.M. on August 8, 1952. Appellant admitted that Chunn sustained accidental personal injuries on August 8, 1952, while enroute in an automobile from Midland to Snyder, when he was involved in a collision about eight miles from Big Spring on the road to Snyder. Appellant denied that Chunn left the Midland shop to return to Snyder in connection with his business for, in behalf of, for the convenience of or benefit of, or in the course of his employment with Morris & Blount Tool Company. Appellant contends that at the time Chunn left Midland for Snyder on the occasion in question, he was on a personal mission which had nothing to do with the business of his employer.

Appellant further admitted that on different occasions prior to August 5, 1952, Chunn had been sent to Midland to work on jobs in Midland; that in accordance with company policy on each of such occasions, Chunn had been furnished gas for his car, and had been paid for two hours at the regular wage of a floor machinist, for time in traveling to Midland and had also been paid for two hours at his regular wage for time in returning from Midland to Snyder in relation to the performance of his work at Midland.

Mrs. Chunn, on direct examination, was permitted to testify concerning a declaration of her husband, made in anticipation of and concurrently with trips made by him from Snyder to Midland covering a period of about six weeks prior to the time of his accidental death. After being asked if on one such occasion Mr. Chunn told her anything about the arrangements for the trip, she testified, over appellant's objection, that her husband told her he "still got paid for going and coming two hours pay each way." She was further permitted to testify, over appellant's objection, that on another such occasion when her husband had gone to Midland and worked for about three days and had come home to Snyder and spent the night, and she was with him at the company shop in Snyder when he filled his car with gasoline in preparation for the trip back to Midland to complete a job, that he had stated to her that "he got that plus two hours road time." Appellant objected to the above testimony of Mrs. Chunn concerning the statements made to her by her husband on the ground that they were hearsay, irrelevant and immaterial, and further, that there was no showing that Chunn got the gasoline with approval or authority from his employer. Appellee contends that the declarations of G. P. Chunn were not recitals of fact for proof of their truth, but were admissible for the purpose of showing his state of mind, plans, and intentions in connection with matters actually being done at the time the declarations were made.

■ As previously noted, the statements by Mr. Chunn concerning which his wife testified, occurred some time during a period of about six weeks prior to his death. They were not declarations by him at the time of and concerning his immediate purpose on the trip on which his death occurred. The testimony was hearsay and inadmissible. Williams v. Texas Employers' Ins. Ass'n, Tex.Civ.App., 218 S.W.2d 482, Writ Ref.; Highway Ins. Underwriters v. Spradlin, Tex.Civ.App., 190 S.W.2d 181.

The case of American General Ins. Co. v. Jones, Tex., 255 S.W.2d 502, 504, was a workmen's compensation death case in which a witness was permitted, over objection, to testify about conversations with the deceased concerning his work for the purpose of showing that his duties consisted of patrolling the highway and taking care of flares on the highway. One of the conversations testified about was approximately four days before the accident. The following language of the Supreme Court in dis-

posing of the matter is peculiarly applicable to the present case:

"This is out-of-court and unsworn conversation related by the witness Newsom and offered to allow the deceased to testify through Newsom. Clearly it is hearsay testimony offered for the purpose of proving the truth of the content of the out-of-court statement. The claimant says that it was offered to prove mental state. These conversations were not made about the very trip on which he was injured and offered as declarations of his immediate purpose on that night. The mental state of the deceased on other occasions is not in issue. These conversations were offered on scope of employment.

"The claimant also contends that these conversations were a part of the res gestae. The latest of these conversations occurred four days before the accident. They are not relevant to the happening of the accident but are relevant only on scope of employment. The employment contract had been in existence for some time. They are clearly not res gestae to the accident. Newsom might testify to what he saw and observed but not to the content of conversation."

■ Appellant also complains of the admission of testimony by the witnesses Brunson and Boyles concerning the custom or policy of the company regarding payment to its Snyder employees for time and travel expenses on trips to and from company work in Midland. In all probability, the manner in which this evidence was developed in the trial court will not be the same on another trial. We will, therefore, not discuss this matter in detail. We simply note that evidence of a custom concerning the subject matter of a contract is admissible to show the intention of the parties, where the custom is known to the witness, and where from the contract or the evidence concerning the contract the intention of the parties on the disputed point is ambiguous or uncertain. 17 Tex.Jur. page 414.

In appellant's third and fourth points, it is contended that the court erred in overruling appellant's motion for an instructed verdict and in refusing to grant a new trial. Appellant urges that there was no evidence of probative force that G. P. Chunn's injuries were sustained in the course of his employment; that the jury finding to that effect was not supported by sufficient evidence and that such finding was contrary to the overwhelming weight of the evidence.

■ We are of the opinion, after a careful examination of the record, that there was evidence that Chunn's injuries were sustained in the course of his employment. The witness Brunson, who was the brother of Mrs. Chunn, testified that both he and Mr. Chunn were floor machinists and did the same type of work for Morris & Blount Tool Company; that before Mr. Chunn was employed, Brunson was overworked and behind with his work; that the shop foreman for Morris & Blount asked Brunson to get an additional man and informed him concerning the amount of pay such employee would receive, plus overtime over forty hours and road time between jobs. Brunson also testified that payment of wages and road time spent in travel between jobs was a company policy applied without exception, so far as Brunson knew, to all employees; that the policy was that "any time you go back and forth to the job from the shop you got road time," and that there was no understanding, as contended by appellant, that an employee traveling out of Snyder to Midland and back was to be paid for only two trips, one to Midland and the other back to Snyder when the job was finished regardless of how long the job took. The testimony of the witness Robert Boyles was substantially to the same effect. Appellant's Snyder shop superintendent testified that on the occasions Mr. Chunn was sent to Midland it was not for any special length of time but was to do such work as might be required, including other jobs that might come into the Midland shop while he was there; that Chunn could not tell how long he might be in Midland.

Special Issue No. 3 and the court's definition in connection with the matter there inquired about submitted the question of whether the injury to Chunn was sustained in the course of his employment. Special Issue No. 3 was as follows:

"Do you find from a preponderance of the evidence that such injury or injuries, if any, to G. P. Chunn's body on August 8, 1952, were injury or injuries sustained in the course of his employment, if he was an employee, for Morris & Blount Tool Company?"

In the portion of the charge preceding Special Issues the court defined certain terms, including the following:

"By the term 'Injury Sustained in the Course of Employment,' as used in this charge, is meant and included all injuries of every kind and character having to do with and originating in the work, business, trade, or profession of the employer received by an employee while engaged in or about the furtherance of the affairs or business of his employer, whether upon the premises of the employer, or elsewhere, and resulting from a risk or hazard to the employee, which is necessarily or ordinarily connected with or arises from such affairs or business of the employer. In this connection, you are instructed that if an activity of an employee otherwise in the course of employment and of benefit to the employer at the same time serves the employee's personal pleasure or business, an injury sustained by him in such dual activity is an injury sustained in the course of employment as above defined, but that an injury sustained in an activity solely or exclusively for an employee's own personal pleasure or business and arising from risks or hazards not in any way connected with the employer's affairs or business is not an injury sustained in the course of employment."

Appellant's fifth point complains of the refusal of the court to submit requested special issues inquiring (1) whether the injury to the deceased Chunn originated in the work, trade or business of his employer, Morris & Blount Tool Company, and (2) whether such injury was received while Chunn was engaged in or about the affairs of the business of his employer.

■ The matters inquired about in appellant's requested special issues were covered in special issue No. 3 and the quoted instruction and definition. It is not necessary to divide the issue of course of employment into parts, which together constitute the whole of the ultimate issue, and submit each part to the jury. It is sufficient to submit the one ultimate issue. Fritzmeier v. Texas Employers' Ins. Ass'n, 131 Tex. 165, 114 S.W.2d 236; Gulf, C. & S. F. Ry. Co. v. Jones, Tex.Civ.App., 221 S.W.2d 1010, Ref., N.R.E.; Texas Employers' Ins. Ass'n v. Pugh, Tex.Civ.App., 57 S.W.2d 248, Writ Dis.; Anchor Cas. Co. v. Patterson, Tex.Civ.App., 239 S.W.2d 904, Ref., N.R.E.

Appellant further complains of the action of the court in overruling objections and requests for instructions to the jury concerning argument of appellee's counsel to the jury. Appellant's point 8 concerns reference by appellee's counsel in his opening argument to the fact that Mr. Brashier, shop foreman for Morris & Blount Tool Company, at the time of Mr. Chunn's death, did not testify. This point appears well taken but in view of the fact that appellee urges that the reference was not intended to imply that Brashier's testimony would have been unfavorable to appellant or that appellant had any duty to secure the presence of the witness, we feel that the matter should not arise upon another trial and that it is not necessary to discuss the point in detail.

For the reasons stated, the judgment of the trial court is reversed and the cause is remanded.